# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

CARLEAN DATES

    Plaintiff,

v.

HSBC BANK USA, N.A. et al.,

    Defendants.

Case No. 1:19-cv-445
**JUDGE DOUGLAS R. COLE**
Magistrate Judge Litkovitz

## ORDER

This cause comes before the Court on the Objection of Plaintiff Carlean Dates ("Dates") (Doc. 14) to the Magistrate Judge's July 2, 2020 Report and Recommendation ("R&R") (Doc. 13). That R&R, in turn, is reviewing an appeal from a May 22, 2019 bankruptcy court order (the "Bankruptcy Order") in adversary proceeding No. 19-ap-1011 in Bankruptcy Case No. 1:18-bk-14602. More specifically, the Bankruptcy Order granted the motion to dismiss of defendant the Law Offices of John D. Clunk Co. LPA ("Clunk Co.") in that adversary proceeding. In the R&R, the Magistrate Judge recommends: (1) that the Court deny oral argument to Dates on her appeal; and (2) that the Court affirm the bankruptcy court's May 22, 2019 Order. For the reasons set forth more fully below, the Court **OVERRULES** Dates' Objection (Doc. 14), **ADOPTS** the R&R (Doc. 13), and thereby **DENIES** Dates' request for oral argument and **AFFIRMS** the bankruptcy court's May 22, 2019 Order dismissing Clunk Co.

# BACKGROUND

### A. Dates Has Filed Multiple Bankruptcy Actions Seeking To Challenge The Validity Of A Mortgage, But The Bankruptcy Court Has Determined That Res Judicata Bars Her Claim.

The distant ancestor of the present dispute was a relatively straightforward foreclosure action in the Hamilton County Court of Common Pleas. Dates and Obera Franklin executed a note and mortgage secured by real property located at 12062 Hazelhurst Drive, Cincinnati, Ohio 45204. HSBC ultimately became the assignee on that mortgage. When Dates and Franklin defaulted, HSBC, represented by Clunk Co., initiated foreclosure proceedings in the above-mentioned court.

Dates responded by filing a bankruptcy action. (*See* Case No. 1:12-bk-14507). While that automatically stayed the foreclosure proceedings, *see* 11 U.S.C. § 362, HSBC sought, and eventually obtained, a relief from that stay. (*See* March 19, 2013 Order, Case 1:12-bk-14507, Doc. 130). Free to proceed in the state-court foreclosure action, HSBC obtained a judgement of foreclosure in that action on January 29, 2014.

But Dates was not finished with her efforts to prevent foreclosure. She filed three more bankruptcy actions. The Magistrate Judge recounts them this way:

> No. 16-bk-12410 (dismissed following conversion from Chapter 13 to Chapter 7 for failure to comply with a bankruptcy court order); No. 18-bk-13150 (Chapter 13, dismissed for failure to make plan payments or appear at 11 U.S.C. § 341 meeting); and No. 18-bk-14602 (discharge issued following conversion from Chapter 13 to Chapter 7).

(R&R, Doc. 13, #731). Along the way in the various bankruptcy actions, Dates filed adversary proceedings against HSBC and Clunk Co. (who had prosecuted the foreclosure action on HSBC's behalf), among others, alleging that they violated the Fair Debt Collection Practices Act, as well as challenging the validity of the lien on

which they had foreclosed. When Dates first raised the issue in her 2016 bankruptcy proceedings, the bankruptcy court granted the defendants (including Clunk Co.) judgment on the pleadings, finding that the res judicata effect of the state court's foreclosure judgment barred the claims Dates was seeking to assert. The appeal of that ruling is still pending in a related action. (*See id.*).

Undaunted, Dates sought to raise the same issues in an adversary proceeding in her first 2018 bankruptcy action (and third overall bankruptcy case). (*See* Case No. 18-bk-13150). But that adversary proceeding was dismissed when the underlying bankruptcy action was dismissed.

The instant appeal arises from an adversary proceeding Dates initiated in her *fourth* bankruptcy action, Case No. 1:18-bk-14602. Once again, she seeks to challenge the validity of the lien securing the Hazelhurst Drive property. And once again, the bankruptcy court found that res judicata barred her attempt. As the bankruptcy court put it: "This Court wants to emphasize to Ms. Dates that the validity of HSBC's lien against [the Hazelhurst Drive property] was determined by the State Court and is not subject to review by this Court." (*See* R&R, Doc. 13, #732 (quoting No. 19-ap-1011, Doc. 28 at 10)).

**B. Dates Appealed The Most Recent Bankruptcy Court Decision To The District Court, And The Magistrate Recommended Affirming The Bankruptcy Court's Decision.**

Dates appealed the bankruptcy court's order to the district court. Because Dates is appearing pro se, the matter was referred to a Magistrate Judge pursuant to General Order CIN 14-01. In a well-reasoned twelve-page decision, the Magistrate

3

Judge determined that the bankruptcy court was correct in deciding that res judicata prevented Dates from pursuing in bankruptcy court her claim that the mortgage and accompanying lien were not valid.

After setting forth the relatively complicated procedural history, the Magistrate Judge began her analysis by correctly noting the legal standard used to review a motion to dismiss. (R&R, Doc. 13, #734–35). She observed that, although resolution of such motions typically turns solely on the contents of the complaint, an exception arises where the complaint references public records or other documents that are central to the claims set forth in the complaint, but are not attached. (*Id.*). Here, that exception allowed the Magistrate Judge to consider, for example, the state court foreclosure judgment and the mortgage. (*Id.*).

The Magistrate Judge then discussed the application of res judicata in the context of bankruptcy proceedings, concluding that "a federal court must give a state court judgment the same preclusive effect it would have in the rendering state." (*Id.* at #736 (quoting *Martin v. Bank of New York, Mellon Corp.*, No. 1:19-cv-142, 2020 WL 1536667, at*4 (S.D. Ohio Mar. 31, 2020) (citing *Dubuc v. Green Oak Tp.*, 312 F.3d 736, 744 (6th Cir. 2002))))). Here, the "rendering state" is Ohio, and Ohio law, the Magistrate Judge said, requires a party asserting res judicata to show each of four elements: (1) a final decision on the merits; (2) a later action involving the same parties or privies; (3) the later action involves claims that were or could have been litigated in the first action; and (4) the later action arises out of the same transaction or occurrence as the first matter. (R&R, Doc. 13, #736–37 (citing cases)).

4

The Magistrate Judge then walked through each of those four elements, finding each element present as to the foreclosure action's resolution of the validity issue that Dates was seeking to challenge in the adversary proceeding. The foreclosure judgment constituted a "final decision on the merits." (*Id*. at #737). Dates, HSBC and Clunk Co. were all either parties (Dates and HSBC) or privies (Clunk Co.) to that action. (*Id*. at #737–38). Dates could have raised her concerns regarding the validity of the mortgage in that action. (*Id*. at #738–41). And her claim in the adversary proceeding arose from the same set of operative facts (i.e., the mortgage on the Hazelhurst Drive property). (*Id*. at #738).

Finally, because Dates' challenge to the validity of the mortgage was a necessary predicate to her claim against Clunk Co., the Magistrate Judge concluded that claim fails as a matter of law. The R&R thus recommended affirming the Order dismissing the action against Clunk Co.

C.  **Dates Objected To The R&R.**

Dates filed a timely objection to the R&R (Doc. 14). Merely referring to it as an "objection," though, does not do it full justice. The exact title of the filing is a little more involved:

> Affirm Response Objection To Magistrate's Report and Recommendations; Conflict of Variance of Law; Withdrawal of signature from General deposit and Redeposit signature under special deposit, Notice to bring forth contract and contest to Rules of Civil Procedure, Notice of Request for Documents, Proof of Claim, Letter of Rogatory, Notice to Show Cause of Authority to File Pleading(s) or Documents for HSBC Bank USA NA as Trustee for the Certificate Holder of ACE Securities Corp. Home Equity Loan Trust, Series 2006-FM2 Asset-Back Pass-Through Certificate and Select Portfolio Servicing Inc.

5

(*Id.* at #744). That is a mouthful. Accordingly, for simplicity, the Court will continue to refer to it as the "Objection."

That being said, it is not at all clear that Dates understands or intends her filing to be an objection to the Magistrate Judge's specific R&R, so much as an attack on the nature and scope of the Court's power to adjudicate her claim. Her opening paragraph, for example, avers that she is "living & domiciled outside and federal zone or District in a non-military occupied private State Ohio on the land," and thus is "not subject to the jurisdiction of the UNITED STATES or any Corporate Fiction Form of Government," a term she does not further define in her Objection. (*Id.*). Further expanding on her jurisdictional concern, she avers she is filing her Objection "as a Citizen of Heaven through Allah and one of the union states." (*Id.*).

Beyond the jurisdictional challenge, her first substantive complaint is labeled "Conflict of Variance of Law." (*Id.* at #746). In that challenge, she invokes "the 1938 Erie Railroad case," and "demand[s] [the Court] to show cause why [her] private citizen substantive rights should be co-mingled with enemy belligerents." (*Id.* at #747). She further references the "Trading with the Enemy Act" and "the War Powers Act" in support of this challenge. (*Id.*). She does not identify the part of the R&R to which her argument applies.

Next, in what appears to be a procedural challenge, she "withdraw[s] her signature from General Deposit" and "Redeposit[s] Signature under special Deposit." (*Id.*). Again, there is no reference to the R&R.

6

The next portion of the Objection is labeled "Acceptance Under Proof Of Claim" and appears to be generally directed at attempting to show that the mortgage on her property was procured through fraud, and that allowing foreclosure on the property violates "substantive due process by the (Constitution 1787)." (*Id.* at #747–48).

Following that is a section labeled "Proof of Life." There, Dates "verifies she is a living woman," which she substantiates with a notarized affidavit attached as an exhibit to her Objection. (*Id.* at #748). She then advances what appears to be a request for a "letter of rogatory" from the Court. (*Id.* at #748–49).

In an interesting turn, the Objection then requests that the Court require ACE Securities Corp. Home Equity Loan Trust, an entity that is not referenced in the R&R, to "put up a performance cash bond of three million dollars USD ($3,000,000)," and also asks the Court to "inform carlean of where she needs to pickup the cash bond." (*Id.* at #749).

Finally, in a move that seems intended to advance her charges of fraud in connection with the mortgage, she argues that "all [loan documents] filed are hearsay and objected to and must be stricken from the record." (*Id.* at #750).

In none of her challenges does she mention any specific portion of the R&R. Indeed, her only reference to that filing at all is in the fact section of her Objection where she asserts that "Report and Recommendation by Magistrate's [sic] or Attorney(s) statements or briefs are not evidence." (*Id.* at #745).

Her objection is now before the Court.

7

## LEGAL STANDARD

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Importantly, the Court's job is not to conduct a free-wheeling examination of the entire R&R, but only to address any specific objections that a party has advanced to some identified portion of that R&R.

That being said, here, the petitioner is proceeding pro se. A pro se litigant's pleadings are to be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). At the same time, pro se litigants must still comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

There is one remaining aspect of this case that impacts the Court's scrutiny on review. In the R&R, the Magistrate Judge was reviewing a bankruptcy court order. On review of bankruptcy court orders, while the district court (and, by extension, the Magistrate Judge) reviews legal determinations de novo, factual determinations, as the Magistrate Judge correctly observed, are reviewed under a "clearly erroneous" standard. (Doc. 13, #733 (citing *In re Eagle Picher Indus., Inc.*, 164 B.R. 265, 269 (S.D. Ohio 1994) (in turn citing *In re Arnold*, 908 F.2d 52, 55 (6th Cir. 1990), and *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988)).

Combining these various standards, the Court's task in this matter is to review de novo, based on the specific objections that Dates raised to the R&R, the Magistrate Judge's determination in that R&R that the bankruptcy court's legal determinations were correct, and that its factual determinations were not clearly erroneous.

## LAW AND ANALYSIS

The standard of review creates a problem for Dates right off the bat. That is because, despite careful review of her Objection, the Court cannot identify the portions of the R&R to which Dates is objecting. Indeed, in all candor, the Court struggles to make much sense out of Dates' Objection at all.

To start, as noted above, the "Objection" seems to include requests for various forms of relief that go far beyond complaints about the R&R. Dates' request for a "Letter of Rogatory," for example, does not appear to be an objection to the R&R, so much as a new request for relief. Such requests are procedurally improper, and the Court will limit its analysis, as it must, to the specific objections that Dates makes to the R&R.

Those objections seem to fall into two general categories. First, she attacks the power of the Court to adjudicate her claim, and second, she argues the merits of her case. The Court will address them in that order.

Her claim that she is "not subject to the jurisdiction of the UNITED STATES or any Corporate Fiction Form of Government," (Objection, Doc. 14, #744) could perhaps be a promising line of attack, depending on what she means. Article III courts are courts of limited jurisdiction, and a party is free to raise challenges to subject-

9

matter jurisdiction at any time. *United States v. 1308 Selby Lane, Knoxville, TN 37922*, 675 F. App'x 546, 547 (6th Cir. 2017) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")(quoting Fed. R. Civ. P. 12(h)(3)).

Ultimately, though, on the facts here, her attack in unavailing. To start, it is not entirely clear whether her challenge is to personal jurisdiction or subject-matter jurisdiction. Her argument seems to suggest that she believes that, as a "Citizen of Heaven," she is personally beyond the power of the forum. That could be understood as an attack based on lack of personal jurisdiction. But if that is the case, Dates has a problem—personal jurisdiction is waivable, and one way in which a party waives it is by invoking a court's jurisdiction, which Dates did here when she filed her bankruptcy proceeding and then also appealed to this Court. *See, e.g., Taglieri v. Monasky*, 767 Fed. App'x 597, 600 (6th Cir. 2019) (noting that party who files claim in federal court "voluntarily submit[s] himself to the court's jurisdiction to decide all issues embraced in the suit") (quotations omitted).

Dates' later reference to *Erie* (discussed below), though, may suggest that she is raising her citizenship in connection with some kind of challenge to diversity jurisdiction, which of course *is* a subject-matter jurisdiction issue. But, if that is the case, her challenge still fails. The matter is not before the Court on diversity grounds. Rather, the Constitution specifically grants to Congress the power to "enact uniform Laws on the subject of Bankruptcies through the United States." U.S. Const. Art. 1, § 8, Cl. 4. Congress has done so. It was those laws that she invoked when she filed

10

suit in bankruptcy court, and it is federal law that creates her right to appeal from the bankruptcy court's determination. Thus, the matter is here on a federal question, rendering citizenship irrelevant for subject-matter jurisdiction purposes.

Or perhaps her jurisdictional concerns should be understood as directed at the power of the bankruptcy court, itself. In fairness, there have been ongoing questions for decades about the precise contours of the allocation of power between bankruptcy courts (which are Article I courts) and district courts (which are Article III courts). *See generally, e.g.*, *Wellness Intern. Network, Ltd. v. Sharif*, 575 U.S. 665 (2015) (discussing the issue). But there is little question that the underlying dispute here, which involved the validity of a lien on estate property, was in the bankruptcy court's wheelhouse. And in any event, as an "aggrieved person," Dates had the right to appeal the bankruptcy court order to an Article III court (which she has done), meaning that she will have an Article III adjudication. Thus, however understood, her jurisdictional challenge falls short.

Moving beyond her jurisdictional challenge and turning to the merits, there is simply not much by way of a specific objection to anything in the R&R. As described above, the only place in which she even references the R&R is on the second page of her nine-page filing, where she argues that the "Report and Recommendation by Magistrate's [sic] or Attorney(s) statements or briefs are not evidence and have never presented to the court the original documents from the trust proving delivery of any

11

equitable rights or interest in carlean's[1] equitable interest in this case." (*Id.* at #745). But the Court does not understand the R&R to be claiming that the R&R itself constitutes "evidence." And, to the extent that Dates' argument is that original mortgage documents were required at some point to prove the appropriateness of foreclosure, that also misses the boat in terms of challenging the R&R, which was decided on res judicata grounds, not adequacy of evidence grounds.

The remainder of Dates' objections, so far as the Court can tell, are an attempt to re-argue various underlying points that she was arguing in the bankruptcy court. For example, she states that she "objects to the equitable by characteristic title because equitable by nature title is superior." (*Id.*). Even judged by the lenient standards applied to pro se filings, the Court cannot fathom the substance of that argument, other than to note, once again, it does not appear to be an effort to identify any specific error in the R&R.

The Court likewise finds incomprehensible Dates' argument directed at "Conflict of Variance of Law." (*Id.* at #746–47). Dates claims that "[w]hen there is a conflict of law between the rules of equity and the rules of law over the same matter, the rules of equity shall always prevail." (*Id.* at #746). She does not cite anything for this proposition, nor offer any explanation as to how, if at all, acceptance of that proposition would undermine any aspect of the R&R. Her follow-up demand that "this case be sealed and the rules of equity shall apply," suffers the same fate. (*Id.*).

---

[1] As far as the Court can tell, it appears that the lower-case "carlean dates" is a reference to her as an "entitlement holder," while an upper case Carlean Dates (or CARLEAN DATES) is a reference to an "estate" presumably held in a trust with that name. (*See* Doc. 14, #744).

In further support of her "conflict of variance" arguments, she asserts that "the rules establish [sic] in the 1938 Erie Railroad case does [sic] apply to carlean." (*Id.* at #747). The Court understands that to be a reference to *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), but cannot ascertain what the nature of Dates' *Erie* argument is. As described above, it appears that Dates believes that *Erie* prevents the Court from "co-mingling" her "citizen substantive rights" with those of "enemy belligerents." (*Id.*). But the Court cannot make heads or tails of that, nor does her later reference in that same argument to the "Trading with the Enemy Act" or the "War Powers Act" clear up the Court's confusion. (*Id.*).

Moving on, she appears to request that the Court require ACE Securities Corp., an entity wholly separate and apart from Clunk Co., and perhaps more importantly an entity that appears *nowhere* in the R&R at issue, to "put up a performance cash bond of three million dollars USD ($3,000,000) and inform carlean of where she needs to pickup the cash bond." (*Id.* at #749). As she cites no legal authority for her request, the Court declines to act on it.

At bottom, even when Dates' Objection is interpreted as generously as possible in her favor, Dates has failed to offer a single specific objection to the R&R. Absent such objection, the Court has no obligation to independently review or assess the R&R. *See Howard v. Sec. of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object."). That, in and of itself, is a sufficient basis for adopting the R&R. *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (noting that in the absence of an

13

objection, a district court need not "review a magistrate's factual or legal conclusions, under a *de novo* or any other standard").

Even though not necessary, however, the Court has undertaken a brief review of the R&R and finds nothing that suggests that either the bankruptcy court or the Magistrate Judge arrived at an incorrect result. The validity of the underlying lien at issue here (which resulted from a mortgage) was determined by an Ohio state court. Federal law thus incorporates Ohio's law of preclusion in deciding the preclusive effect of that judgment. And here, under Ohio law, that earlier foreclosure judgment precludes Dates' later efforts to relitigate that same issue in her bankruptcy proceedings. The bankruptcy court's resolution of that issue in connection with her *fourth* bankruptcy action appears to this Court to be just as correct as when the bankruptcy court reached that same result, on that same issue, in her second bankruptcy action.

Last, the Court notes that the May 22, 2019 Order that Dates challenges here also appropriately advised Dates that "frivolous filings and filings presented for an improper purpose including harassment and unnecessary delay … may result in sanctions." (*See* R&R, Doc. 13, #732 (quoting No. 19-ap-1011, Doc. 28 at 10)). This Court urges Dates to heed that sound advice.

## CONCLUSION

For the above-stated reasons, the Court **ADOPTS** the Report & Recommendation (Doc. 13), **DENIES** Dates oral argument on her Objection (Doc. 14), **AFFIRMS** the bankruptcy court's May 22, 2019 Order and Memorandum, and

14

**DISMISSES** the claim against Clunk Co. **WITH PREJUDICE**. The Court further **ORDERS** the Clerk to **TERMINATE** this case on the Court's docket.

**SO ORDERED.**

<u>December 10, 2020</u>
**DATE**

                                           **DOUGLAS R. COLE**
                                           **UNITED STATES DISTRICT JUDGE**